# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| DEREK JACKSON on behalf of themselves and others similarly situated, | : : : | |
| Plaintiff, | : : | Case No. |
| v. | : : : : | |
| SUNPATH, LTD., ANDREW GARCIA, NATIONAL AUTO PROTECTION CORP, and WILLIAM T. FINNERAN | : : : : : | |
| Defendants. | : : : | |

## CLASS ACTION COMPLAINT

### Preliminary Statement

1.  Plaintiff Derek Jackson bring this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act, 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2.  National Auto Protection Corp makes automated telemarketing calls to originate new warranty customers, including for the Defendant Sunpath Ltd. ("Sunpath"). National Auto Protection Corp initiated an automated pre-recorded telemarketing call to a cellular telephone number of Mr. Jackson as well as the cellular telephone of other putative class members for the purposes using an automated dialing system, which is prohibited by the TCPA.

3.  The Plaintiff never consented to receive the calls, which were placed to him for telemarketing purposes. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, the Plaintiff bring this action on

behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of the Defendants.

4. A class action is the best means of obtaining redress for the Defendants' wide scale illegal telemarketing, and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

5. Plaintiff Derek Jackson is a resident of the Commonwealth of Massachusetts and this District.

6. Defendant Sunpath, Ltd. is a Delaware corporation that has its principal office in Braintree, MA, and conducts business in this District.

7. Andrew Garcia is the owner of Sunpath.

8. National Auto Protection Corp is a company with its principal place of business West Palm Beach, FL. National Auto Protection Corp engages in telemarketing nationwide, including into this District.

9. William T. Finneran is the owner of National Auto Protection Corp.

## Jurisdiction & Venue

10. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

11. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because the Defendants are residents of this district for Venue purposes. Venue is also proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district as the telemarketing calls that gave rise to the Plaintiff's claims were made into

this district, and the Plaintiff's cellular telephone, a substantial portion of the property at issue for these claims, are located in this district.

**The Telephone Consumer Protection Act**

12.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

<u>The TCPA Prohibits Automated Telemarketing Calls</u>

13.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii).  The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A).  *See* 47 U.S.C. § 227(b)(3).

14.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

15.     The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

16. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

Individual Liability under the TCPA

17. Under the TCPA, an individual may be personally liable for the acts alleged in this Complaint pursuant to 47 U.S.C. § 217 of the TCPA, which reads, *inter alia*:

> [T]he act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user *as well as of that person*.

47. U.S.C. § 217.

18. When considering individual officer liability, other Courts have agreed that a corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *See, e.g.*, *Jackson Five Star Catering, Inc. v. Beason*, 2013 U.S. Dist. LEXIS 159985, *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA "where they 'had direct, personal participation in or personally authorized the conduct found to have violated the statute.'"); *Maryland v. Universal*

*Elections*, 787 F. Supp. 2d 408, 415-16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

19. This is consistent with the general tort principle that corporate officers or agents are personally liable for those torts which they personally commit, or which they inspire or participate in, even though performed in the name of an artificial body.

20. Here, Mr. Finneran and Mr. Garcia personally authorized the telemarketing conduct.

21. In fact, despite previously being sued for TCPA violations, both parties have continued to work together in a relationship where National Auto Protection Corp. engages in telemarketing for Sunpath.

## Factual Allegations

22. To generate new clients, National Auto relies on telemarketing.

23. One of National Auto's strategies for telemarketing involve hiring third parties that make use of an automatic telephone dialing system ("ATDS") to solicit potential customers through the use of a predictive dialer.

24. Coupled with that technology, National Auto also has some of its third parties employ the use of pre-recorded messages, which require the consumer to affirmatively respond to an automated message before they can speak with a live person.

25. National Auto engages this use of this equipment because it allows for thousands of automated calls to be placed at one time, but its telemarketing representatives, who are paid by the hour, only talk to individuals who pick up the telephone.

26. Through this method, National Auto shifts the burden of wasted time to the consumers it calls with unsolicited messages.

27. Sunpath is a company that offers extended warranties on automobiles.

28. Some of National Auto's calls are made for the benefit of Sunpath.

Call to Mr. Jackson

29. Mr. Jackson is, and at all times mentioned herein, a "person" as defined by 47 U.S.C. § 153(39).

30. Mr. Jackson's cellular telephone number is (978) 879-XXXX.

31. NAPC placed an automated telemarketing call to Mr. Jackson on November 20, 2017.

32. When the call was answered, there was a lengthy pause and a click followed by silence, which indicated to the Plaintiff that the call was made using an ATDS.

33. A pre-recorded message was then played, further indicating the use of an ATDS.

34. The company was not identified in the pre-recorded message, so the Plaintiff responded to try to identify the company.

35. The caller claimed that they were with the "dealer processing center".

36. The caller later claimed that their website was www.gosunpath.com.

37. That website is owned and operated by the Defendant Sunpath.

38. National Auto was later identified as the actual caller the Plaintiff spoke with.

39. National Auto, despite not having the Plaintiff's prior express written consent, used a predictive dialer to make repeated calls to the Plaintiff's cellular telephone number continuing to offer him auto warranty services.

40. Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up, they were charged for the calls and their privacy was improperly invaded.

41. Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of plaintiff and the class.

### Sunpath's Liability for the Telemarketing Call

42. Sunpath is a "person," as defined by 47 U.S.C. § 153(39).

43. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

44. In their January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

45. On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that sellers such as Sunpath may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

46. More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is

liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

47. The May 2013 FCC Ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 n. 107.

48. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

28 CC Rcd at 6592 (¶ 46).

49. Sunpath is legally responsible for ensuring that National Auto complied with the TCPA, even if Sunpath did not itself make the calls.

50. Sunpath knowingly and actively accepted business that originated through the illegal telemarketing calls from National Auto Protection Corp and Motor Vehicle Assurance.

51. In fact, Sunpath accepted the business from illegal calls from the defendants, even while it was being sued in another TCPA putative class action alleging that the third parties working on its behalf were violating the TCPA.

52. By hiring a company to make calls on its behalf, Sunpath "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

53. Similarly, by accepting these contacts, Motor Vehicle Assurance and the National Auto Protection Corp "manifest[ed] assent or otherwise consent[ed] . . . to act" on behalf of Sunpath, as described in the Restatement (Third) of Agency. As such, National Auto Protection Corp and Motor Vehicle Assurance are agents of Sunpath.

54. Moreover, Sunpath maintained interim control over National Auto Protection Corp's actions.

55. For example, Sunpath had absolute control over whether, and under what circumstances, it would accept a customer.

56. Furthermore, Sunpath had day-to-day control over National Auto's actions, including the ability to prohibit it from using an ATDS or pre-recorded messages to contact potential customers of Sunpath. Sunpath failed to make such an instruction to these companies, and as a result, is liable for National Auto Protection Corp and Motor Vehicle Assurance's conduct.

57. Additionally, Sunpath restricted the geographic location that National Auto Protection Corp could promote Sunpath.

58. Sunpath also gave National Auto Protection Corp the power to affect its legal relations. In fact, Sunpath is believed to give the third parties that call on their behalf, including the co-defendants, a form contract to use to sign up new customers that receive telemarketing calls that include the following terms:

- "this SERVICE CONTRACT is between YOU and SunPath LTD Corp. d/b/a SunPath LTD Corp of Delaware" (defined in the contract as the "ADMINISTRATOR)

- "Sunpath is also the SERVICE CONTRACT ADMINISTRATOR and handles all administrative functions of this SERVICE CONTRACT."
- "All inquiries should be directed to SunPath LTD Corp. of Delaware at 888-990-7786."
- "the ADMINISTRATOR will approve the claim and pay the charges in accordance with the terms of this SERVICE CONTRACT"

59. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

## Class Action Allegations

60. As authorized by Rule 23(b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of classes of all other persons or entities similarly situated.

61. The classes of persons Plaintiff propose to represent is tentatively defined as:

TCPA CLASS

All persons within the United States to whom: (a) National Auto Protection Corp and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) to their cellular telephone number; (c) using an automatic telephone dialing system or an artificial or prerecorded voice; and (d) at any time in the period that begins four years before the date of filing this Complaint to trial.

    SUNPATH SUBCLASS

    All persons within the United States to whom: (a) National Auto Protection Corp and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) to their cellular telephone number; (c) using an automatic telephone dialing system or an artificial or prerecorded voice; and (d) where Sunpath goods or services were advertised on the call (e) at any time in the period that begins four years before the date of filing this Complaint to trial.

62. Excluded from the classes are the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned and any member of such judge's staff and immediate family.

63. The classes as defined above are identifiable through phone records and phone number databases.

64. The potential classes number at least in the thousands, since automated and pre-recorded telemarketing campaigns make calls to hundreds or thousands of individuals a day. Individual joinder of these persons is impracticable.

65. Plaintiff is a member of the classes.

66. There are questions of law and fact common to Plaintiff and to the proposed classes, including but not limited to the following:

    a. Whether Defendants violated the TCPA by using automated telemarketing to call cellular telephones;

    b. Whether Defendants placed calls using a pre-recorded message;

    c. Whether Defendants placed calls without obtaining the recipients' prior consent for the call;

    d. Whether the Plaintiff and the classes members are entitled to statutory damages because of Defendants' actions.

67. Plaintiff's claims are typical of the claims of class members. Plaintiff's claims, like the claims of the Classes arise out of the same common course of conduct by Defendants and are based on the same legal and remedial theories.

68. Plaintiff is an adequate representative of the classes because his interests do not conflict with the interests of the classes, he will fairly and adequately protect the interests of the classes, and he is represented by counsel skilled and experienced in classes actions, including TCPA class actions.

69. Common questions of law and fact predominate over questions affecting only individual class members. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or its agents.

70. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated.  Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities.  There will be no significant difficulty in the management of this case as a class action.

71. The likelihood that individual members of the classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

72. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for the classes' membership described above.

### Legal Claims

#### Count One:
#### Violation of the TCPA's Automated Calling provisions

73. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

74. The foregoing acts and omissions of Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple

violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiff and members of the Class using an ATDS and/or artificial or prerecorded voice.

75. As a result of Defendants' and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of $500 in damages for each and every call made to their cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

76. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

77. The Defendants' violations were negligent and/or knowing.

**Relief Sought**

For himself and all class members, Plaintiff requests the following relief:

A. Certification of the proposed Classes;

B. Appointment of Plaintiff as representative of the Classes;

C. Appointment of the undersigned counsel as counsel for the Classes;

D. A declaration that Defendants and/or its affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA;

Case 1:19-cv-10556-TSH   Document 1   Filed 03/25/19   Page 14 of 14

E. An order enjoining Defendants and/or its affiliates, agents, and/or other related entities, as provided by law, from making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

F. An award to Plaintiff and the Classes of damages, as allowed by law;

G. Leave to amend this Complaint to conform to the evidence presented at trial; and

H. Orders granting such other and further relief as the Court deems necessary, just, and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

PLAINTIFF,
By his attorneys

*/s/ Anthony I. Paronich*
Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

Alex M. Washkowitz
Jeremy Cohen
CW Law Group, P.C.
188 Oaks Road
Framingham, MA 01701
alex@cwlawgrouppc.com

14